COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-457-CR
 
 
TERRANCE 
WAYNE DAVIS A/K/A TERRANCE DAVIS                 APPELLANT
  
V.
  
THE 
STATE OF TEXAS                                                                  STATE
 
  
------------
 
FROM 
THE 213TH DISTRICT COURT OF TARRANT COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
I. Introduction
        A 
jury convicted Appellant Terrance Wayne Davis of aggravated robbery with a 
deadly weapon and assessed punishment at thirty years’ confinement. In a 
single point, Davis challenges the legal sufficiency of the evidence underlying 
his conviction. We will affirm.
II. Factual 
Background
        Davis 
was involved in an altercation with William Holmes on June 13, 2000. The police 
arrived and subsequently arrested Davis’s girlfriend. The following day, 
Holmes and Paul Harrison encountered Davis, Ryan Letterman, and David Carrington 
in a parking lot between the Union Gospel Mission and the Day Resource Center in 
Fort Worth.[2]  Holmes approached Davis and 
apologized for the altercation that had transpired the day before. However, 
Davis, still angry that police had arrested his girlfriend, told Holmes that 
Holmes must get his “other half” out of jail by the next day or Davis would 
kill him.
        Holmes 
and Harrison began to walk towards the train station, but Davis, Letterman, and 
Carrington followed and forced them up a hill behind the shelter. Davis told 
Harrison to take his backpack off, and Letterman and Carrington told Holmes and 
Harrison to get on their knees. Carrington began kicking Holmes, and Letterman 
struck Holmes and Harrison over the head with a bottle. Davis, who had been 
standing back observing, then pushed the heel of his shoe into Holmes’s 
throat, preventing Holmes from breathing. Davis subsequently told Holmes to cut 
Harrison’s throat with a knife that had been removed from Holmes’s pocket. 
Frightened, and worried for his own safety if he failed to comply with Davis’s 
demand, Holmes cut Harrison’s throat.[3]
        Sometime 
during these events, Carrington emptied Harrison’s backpack and discovered two 
wallets and six packs of cigarettes. Davis, Letterman, and Carrington each took 
two packs of cigarettes, and Letterman gave one wallet to Davis.
        After 
the confrontation, Donald Henderson, who was picking up sack lunches near the 
Presbyterian Night Shelter, saw Holmes and Harrison running towards him. The men 
were splattered with blood. Henderson saw Davis and two other individuals 
walking in the opposite direction. Henderson confronted Davis and his companions 
near the Day Resource Center and asked what had happened; they did not respond.
        Medical 
personnel arrived and tended to Holmes’s and Harrison’s injuries. Holmes 
suffered bruises to his torso and had a large gash on his head that appeared to 
have glass in it. Harrison’s face was bloody and he had a cut on his throat.
        After 
speaking with Holmes, Harrison, and Henderson, a police officer located and 
detained three individuals matching the descriptions of Davis, Letterman, and 
Carrington. The officer found wallets, packs of cigarettes, and Harrison’s 
Social Security card. The ambulance transporting Holmes and Harrison arrived at 
the location where police had Davis, Letterman, and Carrington detained, and 
Holmes identified the three men as the individuals who had assaulted him.[4]
III. Law and 
Application to Facts
        In 
his sole point, Davis argues, generally, that the evidence is legally 
insufficient to sustain his conviction for aggravated robbery with a deadly 
weapon. In reviewing the legal sufficiency of the evidence to support a 
conviction, we view all the evidence in the light most favorable to the verdict 
in order to determine whether any rational trier of fact could have found the 
essential elements of the crime beyond a reasonable doubt. Jackson v. 
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Ross v. State, 
133 S.W.3d 618, 620 (Tex. Crim. App. 2004).
        This 
standard gives full play to the responsibility of the trier of fact to resolve 
conflicts in the testimony, to weigh the evidence, and to draw reasonable 
inferences from basic facts to ultimate facts. Jackson, 443 U.S. at 319, 
99 S. Ct. at 2789. The trier of fact is the sole judge of the weight and 
credibility of the evidence. See Tex. 
Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); Margraves v. State, 
34 S.W.3d 912, 919 (Tex. Crim. App. 2000). Thus, when performing a legal 
sufficiency review, we may not re-evaluate the weight and credibility of the 
evidence and substitute our judgment for that of the fact finder. Dewberry v. 
State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), cert. denied, 529 
U.S. 1131 (2000). We must resolve any inconsistencies in the evidence in favor 
of the verdict. Curry v. State, 30 S.W.3d 394, 406 (Tex. Crim. App. 
2000).
        Section 
29.02 of the Texas Penal Code defines robbery as follows:
  
(a) A person commits an offense if, in the course of committing theft . . . and 
with the intent to obtain or maintain control of the property, he:
 
(1) 
intentionally, knowingly, or recklessly causes bodily injury to another; or
 
(2) 
intentionally or knowingly threatens or places another in fear of imminent 
bodily injury or death.
  
 
Tex. Penal Code Ann. § 29.02(a)(1), (2) 
(Vernon 2003). The robbery becomes aggravated if the perpetrator uses or 
exhibits a deadly weapon. Id. § 29.03(a)(2).
        A 
person is criminally responsible as a party to an offense if the offense is 
committed by his own conduct, by the conduct of another for which he is 
criminally responsible, or by both. Id. § 7.01(a). Furthermore, a person 
is criminally responsible for an offense committed by the conduct of another if 
acting with the intent to promote or assist the commission of the offense, he 
solicits, encourages, directs, aids, or attempts to aid the other person to 
commit the offense. Id. § 7.02(a)(2). Evidence is legally sufficient to 
convict under the law of parties when the defendant is physically present at the 
commission of the offense and encourages its commission by acts, words, or other 
agreement. See Wooden v. State, 101 S.W.3d 542, 546 (Tex. App.—Fort 
Worth 2003, pet. ref’d).
        Here, 
the evidence viewed in the light most favorable to the verdict shows that Davis, 
Letterman, and Carrington, in the course of committing theft, intentionally, 
knowingly, or recklessly caused bodily injury to both Holmes and Harrison. 
Carrington kicked Holmes, Letterman struck Holmes and Harrison with a bottle, 
and Davis pressed his heel up against the throat of Holmes, restricting his 
airflow. Davis told Holmes to cut Harrison’s throat with a knife, and Holmes 
complied out of fear for his life. Carrington and Letterman took two wallets and 
six packs of cigarettes from Harrison’s backpack and divided these items 
between themselves and Davis. Officers recovered these items from Davis, 
Letterman, and Carrington after apprehending them. Finally, Holmes identified 
Davis, Letterman, and Carrington as the individuals who assaulted and robbed 
them.
        Concerning 
the deadly weapon finding, the State called the first police officer to arrive 
at the scene as a witness, and he testified that a bottle and a knife are both 
capable of causing deadly or serious bodily injury, are therefore deadly 
weapons, and were used as deadly weapons in this case. See Hawkins v. State, 
605 S.W.2d 586, 588 (Tex. Crim. App. [Panel Op.] 1980) (“Although a knife is 
not a deadly weapon per se . . . it may be shown to be a deadly weapon . . . 
.”).
        In 
his brief, Davis states that “[p]ivotal to this point is the testimony of Ryan 
Letterman, a co-defendant, who testified that the appellant was not involved in 
any plan to rob the victims in this case.” Notwithstanding whether Davis was 
involved in a plan to rob Holmes and Harrison, the evidence is legally 
sufficient to support a conviction for aggravated robbery so long as a rational 
jury could have found that Davis had the appropriate culpable mental state at 
the time of the commission of the offense. See Tex. Penal Code Ann. § 6.02(a) 
(“Except as provided in Subsection (b), a person does not commit an offense 
unless he intentionally, knowingly, recklessly, or with criminal negligence 
engages in conduct as the definition of the offense requires.”); Cook v. 
State, 884 S.W.2d 485, 487 (Tex. Crim. App. 1994) (“This case involves the 
most basic and fundamental concept of criminal law, that in order to constitute 
a crime, the act or actus reus must be accompanied by a criminal mind or mens 
rea.”).
        Thus, 
viewing the evidence in the light most favorable to the verdict, the jury could 
rationally have found that Davis, acting either alone or as a party, committed 
the offense of aggravated robbery with a deadly weapon beyond a reasonable 
doubt. See Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Wooden, 
101 S.W.3d at 546. Accordingly, we overrule Davis’s point.
IV. Conclusion
Having 
overruled Davis’s sole point, we affirm the trial court’s judgment.
  
  
                                                          PER 
CURIAM
  
  
PANEL 
F:   WALKER, HOLMAN, and GARDNER, JJ.
 
DO 
NOT PUBLISH
Tex. R. App. P. 47.2(b)
 
DELIVERED: 
December 23, 2004


NOTES
1.  
See Tex. R. App. P. 47.4.
2.  
Davis, Letterman, Carrington, Holmes, and Harrison often reside at the 
Presbyterian Night Shelter in Fort Worth.
3.  
Holmes did not cut Harrison’s throat “hard,” and the blade was dull.
4.  
Officers also retrieved Holmes’s knife from him. It appeared to have blood on 
it.