**AFFIRMED and Opinion Filed July 31, 2019**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

_____

## No. 05-18-00148-CR

_____

**MICHAEL ERIC PENNINGTON, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 401st Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 401-82879-2016**

# MEMORANDUM OPINION

Before Justices Schenck, Osborne, and Reichek
Opinion by Justice Reichek

A jury convicted Michael Eric Pennington of capital murder. The State did not seek the death penalty, and the trial court imposed an automatic life sentence without parole. *See* TEX. PENAL CODE ANN. § 12.31(a)(2). On appeal, appellant contends the trial court erred by (1) denying him the ability to present psychiatric evidence of his insanity; (2) not allowing him to voir dire the jury on insanity; and (3) denying his requests for instructions on lesser-included charges of aggravated assault and murder. Appellant also argues the evidence is insufficient to support the "specific intent" element of capital murder. Finally, he complains of "cumulative error." For the following reasons, we overrule all issues and affirm the trial court's judgment.

FACTUAL BACKGROUND

On the night of July 4, 2016, Leasa Carroll called 911 to report that a man, who she identified by name as appellant, was on her front porch trying to "bust" into her house. Carroll said appellant told her that he was going to kill her and that it was her "time." She said appellant was not wearing a shirt, was cussing, and saying "crazy stuff." He wanted her to open the door. Carroll said she had not seen appellant in a while but that he had been harassing her all day.

McKinney police officers Jonathan Rouse and Robert Ensor arrived at the scene about five minutes later. Although they expected to see someone on the front porch, the house was completely dark and the door was closed. They asked dispatch to get an update with the caller, but the caller could not be reached.

Rouse walked around the perimeter of the house to see if he saw anyone or heard anything. Ensor remained in the front yard and saw appellant come out of the front door. Appellant was wearing shorts and gloves, but no shirt or shoes. He was holding a fillet knife in his hand and had blood on his stomach and arm but no apparent injuries. Ensor pointed his gun at appellant and ordered him to drop the knife and get on the ground. Appellant did as ordered.

Carroll was inside the house, lying on the living room floor. She had significant trauma to her chest cavity, was covered in blood, and was struggling to breathe. She died at the scene.

Detectives Brent Walterscheid and Cody Webb were among the officers involved in the investigation of the crime. Both testified there was damage to the front door consistent with the door being forced open. The detectives testified that the door frame and jamb were broken, the wood trim was broken and laying on the floor, the striker plate was damaged, the weather stripping was hanging from the top of the door, and the safety chain was pulled from the wall. Photographs of the damage were admitted as evidence. Officers collected evidence at the scene, including the

knife and gloves worn by appellant.  The knife had a six-and-a-half-inch blade.  Subsequent DNA testing matched the blood on the knife to Carroll.

Dr. Lynn Salzberger performed the autopsy.  Salzberger testified that Carroll sustained twelve sharp force injuries:  five stab wounds to her chest, most of them to the left side; one stab wound and one incised wound to her neck; and five defensive incised wounds to her forearm and hands.[1]  The deepest wound was six-and-a-half inches deep and punctured the upper lobe of her left lung.  Salzberger agreed this wound required "quite a bit of force."   The maximum depth of the wounds to her neck, which perforated her right internal jugular vein and penetrated her voice box, was three inches.  Salzberger agreed that the wounds were made by someone who knew he was "forcefully pushing that knife inside." Salzberger said the size and shape of the knife collected at the scene was consistent with the wounds found on Carroll's body.  Finally, she testified that Carroll died as a result of multiple sharp force injuries.

SUFFICIENCY OF THE EVIDENCE

In his fifth issue, appellant contends the evidence is insufficient to prove that he had the specific intent to cause Carroll's death.

When an appellant challenges the sufficiency of the evidence supporting a conviction, we examine the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic to ultimate facts.  *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).  Therefore, when analyzing the sufficiency of the evidence, we "determine whether the necessary inferences are

---

[1] The medical examiner who performed the autopsy explained that a stab wound was deeper than long, and an incised wound, or cut, was longer than deep.

reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Id*. Direct and circumstantial evidence are treated equally. *Id*.

Capital murder requires the specific intent to kill. *See Threadgill v. State*, 146 S.W.3d 654, 665 (Tex. Crim. App. 2004). In this case, the indictment charged appellant with intentionally causing Carroll's death while in the course of committing and attempting to commit burglary. *See* TEX. PENAL CODE ANN. §§ 19.02(b)(1), 19.03(a)(2). A person acts intentionally with respect to a result of his conduct when it is his conscious objective or desire to cause the result. *See* TEX. PENAL CODE ANN. § 6.03(a) (Vernon 2003). Intent is most often proved through circumstantial evidence surrounding the crime. *Hernandez v. State,* 819 S.W.2d 806, 810 (Tex. Crim. App. 1991). A jury may infer intent from any facts that tend to prove its existence, such as the acts, words, and conduct of the defendant. *Id.*

Specific intent to kill may be inferred from the use of a deadly weapon, unless in the manner of its use, it is reasonably apparent that death or serious bodily injury could not result. *Godsey v. State*, 719 S.W.2d 578, 580–81 (Tex. Crim. App. 1986). If a deadly weapon is used in a deadly manner, the inference is almost conclusive that the defendant intended to kill. *Adanandus v. State*, 866 S.W.2d 210, 215 (Tex. Crim. App. 1993). Although a knife is not a deadly weapon per se, it can qualify as a deadly weapon by demonstrating the manner of its use, its size and shape, and its capacity to produce serious bodily injury or death. *Hawkins v. State*, 605 S.W.2d 586, 588 (Tex. Crim. App. [Panel Op.] 1980); *Martinez v. State*, 699 S.W.2d 910, 913 (Tex. App.—Amarillo 1985, no pet.).

Here, appellant does not challenge that he is the person who killed Carroll; rather, he argues the evidence fails to support even an inference that he had the specific intent to cause her death because there is no evidence of "what transpired between [him] and the victim when he entered

–4–

her house other than that she was stabbed multiple times." The lack of such evidence, however, does not render the evidence actually presented insufficient.

Appellant went to Carroll's house, told her he was going to kill her, and, after breaking through her door, stabbed her multiple times. Five of the stab wounds were to her chest, and one of those wounds was six-and-a-half inches deep, the full measure of the knife's blade, and took "quite a bit" of force. Appellant also stabbed and cut her in the neck, puncturing her voice box and jugular vein. As Salzberger testified, the person who stabbed Carroll knew he was forcefully pushing the knife inside. This evidence was sufficient for a reasonable jury to find beyond a reasonable doubt that appellant had the specific intent to cause Carroll's death. We overrule the fifth issue.

INSANITY DEFENSE

In his first issue, appellant contends the trial court erred in precluding him from presenting psychiatric evidence on an insanity defense. In his second issue, he contends the trial court erred in denying him the ability to voir dire the jury on insanity. The record, however, does not support appellant's complaint.

Appellant filed a notice of intent to raise an insanity defense. The week before trial, the trial court held a hearing to determine whether appellant could produce competent evidence to support the affirmative defense. *See* TEX. CODE CRIM. PROC. ANN. art. 46C.151. Three expert witnesses testified. After hearing the evidence, the trial court initially ruled there was no competent evidence that appellant was insane at the time of the events but indicated he was willing to reconsider his decision.

On the following Monday, which was the first day of trial, the trial judge announced on the record that he had changed his ruling and had sent an email to both the prosecutor and defense counsel the previous Friday. The judge told appellant he had an "absolute right" to enter a not

guilty plea by reason of insanity and he could not prevent defense counsel "from offering evidence with respect to that issue." Further, the judge stated that at the close of the evidence, he would make a legal determination as to whether there was competent evidence on insanity to submit to the jury.

The trial judge then voir dired the jury panel on the issue of insanity, and defense counsel and the prosecutor questioned the panel on the issue as well. At trial, however, appellant presented no evidence of insanity nor did he ask for any issue to be included in the charge. Consequently, we conclude appellant's complaint that he was prevented from offering evidence or questioning the jury on insanity is not supported by the record.[2] We overrule issues one and two.

LESSER INCLUDED OFFENSES

In his third and fourth issues, appellant contends the trial court erred by refusing to instruct the jury on the lesser included offenses of aggravated assault and murder as defined in section 19.02(b)(2).[3] Appellant requested that both offenses be included in the jury charge.

A defendant is entitled to an instruction on a lesser included offense if the proof necessary to establish the charged offense also includes the lesser offense and if the record contains some evidence that would permit a rational jury to find that, if the appellant is guilty, he is guilty only of the lesser offense. *Cavazos v. State*, 382 S.W.3d 377, 382 (Tex. Crim. App. 2012). We review the trial court's decision for an abuse of discretion. *See Threadgill*, 146 S.W.3d at 666.

The State agrees under the circumstances presented here that both murder under section 19.02(b)(2) and aggravated assault are lesser included offenses of capital murder. *Cannon v. State*, 401 S.W.3d 907, 910–11 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) (murder under

---

[2] Appellant may have simply decided to change his trial strategy in response to another ruling on the day of trial. After voir dire but before testimony began, the trial court conducted a hearing on the admissibility of appellant's statements to the responding officers, which included details about the murder. The trial court concluded the statements were inadmissible.

[3] The trial court did charge the jury on intentional murder under penal code section 19.02(b)(1).

–6–

19.02(b)(2)); *Cardenas v. State*, 30 S.W.3d 384, 392 (Tex. Crim. App. 2000) (aggravated assault). The question is whether the second step is met.

The second step is a question of fact and is based on evidence presented at trial. *Cavazos*, 382 S.W.3d at 383. A defendant is entitled to a lesser included offense instruction if some evidence exists from any source raising the issue, regardless whether the evidence is weak, impeached, or contradicted. *Id*. Anything more than a scintilla of evidence may be sufficient to entitle a defendant to a charge on a lesser offense. *Id*. at 385.

Nevertheless, meeting this standard requires "more than mere speculation—it requires affirmative evidence that both raises the lesser-included offense and rebuts or negates an element of the greater offense." *Id*. In other words, there must be some evidence directly germane to the lesser included offense and must rise to a level that a rational jury could find that if appellant is guilty, he is guilty only of the lesser included offense. *Id*.

We begin our analysis with the offense of aggravated assault. Appellant argues he was entitled to an aggravated assault instruction because it would have allowed the jury to consider whether he acted only recklessly. When a person recklessly causes the death of an individual, the offense is manslaughter, an offense which lies between murder and aggravated assault. *Jackson v. State*, 992 S.W.2d 469, 475 (Tex. Crim. App. 1999) (per curiam). A murder defendant is not entitled to an instruction on the lesser included offense of aggravated assault when the evidence showed him, at the least, to be guilty of a homicide. *Id*.

Here, there was no evidence from which a rational jury could conclude that appellant did other than cause the death of Carroll. Thus, the only lesser included offense that could have been raised by evidence of recklessness was manslaughter, not aggravated assault. Accordingly, the trial court did not err in denying appellant's request for an instruction on aggravated assault. We overrule the third issue.

Next, appellant contends the trial court erred by not instructing the jury on the lesser included offense of murder under section 19.02(b)(2) of the penal code. Under section 19.02(b)(2), a person commits murder if he "intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual[.]" TEX. PENAL CODE ANN. § 19.02(b)(2).

Appellant argues the following evidence supports a "finding of intent to cause serious bodily injury:" the house was in disarray and probably inhabited by a hoarder; the police had been to the house many times in the past; he was dressed only in shorts without shoes or a shirt; there was no evidence about what transpired once he was inside the house, other than that he stabbed Carroll multiple times; some of the wounds were cuts and others were stab wounds and no evidence as to the order of wounds; and there was no evidence of "what was said by the victim if anything" and what appellant said when he entered the house. He contends the "strange circumstances" coupled with "the mix of various types of stab wounds" support an inference that he intended to cause serious bodily injury rather than to intentionally and knowingly cause her death.

Initially, we note an instruction on a lesser included offense must be based on affirmative evidence, not the absence of evidence. *See Cavazos*, 382 S.W.3d at 385. So, to the extent he argues there is no evidence about what transpired in the house or what was said is not affirmative evidence to support his request. And the evidence he does rely on does not provide such proof. Whether the house was clean or messy and how he was dressed when he committed the crime does nothing to support his claim that he only intended to commit serious bodily injury. That all of Carroll's wounds were not the same depth likewise does not suggest he intended to cause only serious bodily injury. Appellant stabbed Carroll multiple times in the chest and neck after telling her he was going to kill her. One of those chest wounds was six-and-a-half inches deep, the full measure of the knife's blade, and took "quite a bit" of force. Given these facts, we conclude there

is no evidence in the record from which a rational trier of fact could determine that appellant was guilty only of murder under section 19.02(b)(2). Accordingly, the trial court did not err in refusing appellant's request for an instruction. We overrule the fourth issue.

In his sixth issue, appellant argues the cumulative effect of the errors in this case warrants reversal. Having resolved appellant's issues against him and concluded there was no error, it follows there was no cumulative error. *See Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999) ("[W]e are aware of no authority holding that non-errors may in their cumulative effect cause error."). We overrule the sixth issue.

We affirm the trial court's judgment.

/Amanda L. Reichek/
AMANDA L. REICHEK
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
180148F.U05

–9–



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

MICHAEL ERIC PENNINGTON, Appellant

No. 05-18-00148-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 401st Judicial District Court, Collin County, Texas
Trial Court Cause No. 401-82879-2016.
Opinion delivered by Justice Reichek;
Justices Schenck and Osborne participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered July 31, 2019